UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

KEVIN ALMY,

      Plaintiff,

v.

MINOR ADAMS et al.,

      Defendants.

3:17-cv-00382-RCJ-VPC

**ORDER**

Plaintiff Kevin Almy, a former prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint under 42 U.S.C. § 1983 attached to an application to proceed *in forma pauperis*. The Court grants the application and screens the complaint under 28 U.S.C. § 1915A.

## I. LEGAL STANDARDS

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or its officers or employees. 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous or malicious, fail to state a claim, or seek monetary relief from an immune defendant. *Id.* § 1915A(b). This includes claims based on fantastic or delusional scenarios. *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989). Also, when a prisoner seeks to proceed without prepayment of fees, a court must dismiss if "the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A).

When screening claims for failure to state a claim, a court uses the same standards as under Rule 12(b)(6). *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Federal Rule of

Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency, *see N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983), and dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court treats factual allegations as true and construes them in the light most favorable to the plaintiff, *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986), but does not accept as true "legal conclusions . . . cast in the form of factual allegations." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009). A plaintiff must plead facts pertaining to his case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), he must also allege the facts of his case so that the court can determine whether he has any basis for relief under the legal theory he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Also, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record" if not "subject to

reasonable dispute." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

To state a claim under § 1983, a plaintiff must allege (1) violation of a right secured by the Constitution or laws of the United States (2) by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## II. ANALYSIS

Plaintiff sues forty-five Defendants for events that took place while he was incarcerated at Lovelock Correctional Center ("LCC"), Northern Nevada Correctional Center ("NNCC"), and Southern Desert Correctional Center ("SDCC"). (Compl., ECF No. 1-1). Plaintiff lists ten counts and seeks monetary damages.

### A. Substantive Due Process

In Counts I and III–X, Plaintiff alleges violations of his First Amendment right to access the courts and his Fourteenth Amendment right to (substantive) due process. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Therefore, allegations alleging the denial of access to the courts are analyzed under the First Amendment, not the Fourteenth Amendment. *See, e.g.*, *Peterson v. Miranda*, No. 2:11-cv-01919, 2015 WL 1471506, at \*3 (D. Nev. Mar. 31, 2015). Here, the counts specifying substantive due process violations are based on the alleged denial of access to the courts (which he has also specified, although it is the nature of the allegations that matters). Accordingly, the Court will analyze the claims under the First Amendment, and the Fourteenth Amendment substantive due process claims in Counts I and III–X are dismissed with prejudice, as amendment would be futile.

///

3

**B.     Access to the Courts**

**1.     Count I**

Plaintiff alleges he was convicted in 2007 of offenses occurring in 2006. He claims there is a "high probability" that NDOC officials have improperly calculated his sentences using 2007 statutes such that he has been deprived of statutory credits that ought to apply, affecting his parole eligibility date for both a prior sentence and a sentence that he was serving at the time he filed the Complaint here. For both sentences, Plaintiff should have been seen for parole determinations two years earlier than he was. Because Plaintiff did not have access to necessary pre-2007 statutes, he only learned of the miscalculations on March 23, 2016, when he received a document that contained information regarding findings in a relevant state court case. Plaintiff alleges that had he been seen by the parole board earlier, he would have been granted parole. After learning of the state court case, Plaintiff sought access to the relevant 2006 statutes at both the SDCC and NNCC law libraries but was told that they did not have access, and they were unable to tell him who could provide the statutes. Plaintiff alleges SDCC Warden Williams, SDCC AWO Minor Adams, SDCC AWP Frank Dreesen, SDCC law librarian Rashonda Smith, NNCC Warden Isidro Baca, NNCC AWP Brian Ward, NNCC AWO Schreckengost, and NNCC law library supervisor Pauline Simmons are liable because they are personally involved in the law library and related operations, procedures, and budgeting, but failed to correct the error of not having the particular statutes. Governor Sandoval, former Governor Jim Gibbons, former NDOC Director Skolnik, former NDOC Director Greg Cox, and current NDOC Director James Dzurenda are alleged to be liable because they had the authority to cure the law library defect, but did not do so.

There is no freestanding constitutional right to a law library or legal assistance in prisons. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). Similarly, prisoners do not have a constitutional right to a particular prison grievance process or an independent constitutional right to the processing of grievance appeals. *See Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988). Prisoners have a constitutional right of access to the *courts*.

*Lewis*, 518 U.S. at 346. This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356–57. Furthermore, prison officials have no affirmative duty to help a prisoner discover claims or litigate his claims once he has filed them. *Id.* at 354 (holding that the Constitution does not require the State to "enable the prisoner to discover grievances, and to litigate effectively once in court"); *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995), as amended (May 23, 1995). However, in addition to the right to bring cases, prisoners have the right to litigate, without active interference, claims that have a reasonable basis in law or fact. *Silva v. Di Vittorio*, 658 F.3d 1090, 1103–04 (9th Cir. 2011), *overruled on other grounds as stated in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. However, delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id.* at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id.* at 353 n.3, 354–55. It is not enough for a plaintiff merely to conclude that the allegedly frustrated legal claim was non-frivolous. The "underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The complaint must similarly identify the particular remedy being sought. *Id.* at 415. The "complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued" and a similar plain

5

statement should describe the lost remedy and any remedy legally available for the access to the courts claim. *Id.* at 417–18.

The Court finds that Plaintiff has failed to state a colorable access to the courts claim. Much of Plaintiff's claim is premised on the assumption that he would have discovered his alleged parole eligibility date claim earlier and would have successfully brought it years ago if he had access to certain statutes. Even assuming that, merely based on having access to the specified Nevada statutes, Plaintiff would have identified the proper legal theory and successfully challenged the NDOC's interpretation of state laws, Plaintiff still has not stated a colorable access to the courts claim. As discussed above, prisoners do not have the right to have the legal capability to *discover* claims. Therefore, to the extent Plaintiff's claim is based on his alleged inability to discover his claim regarding the NDOC's calculations, he fails to state a colorable access to the courts claim and cannot do so. The Court therefore dismisses this portion of the claim with prejudice, as amendment would be futile.

Plaintiff also seems to allege that, once he learned of the state court decision and was aware of his claim, he sought access to the relevant 2006 statutes, but was not provided access to those statutes. However, he does not allege how the denial of access to those particular statutes denied him access to the courts. As discussed above, it is not the capability of turning pages in a law library that determines whether a prisoner has been denied the capability of bringing contemplated challenges. Plaintiff alleges that he learned of the NDOC's miscalculations on March 23, 2016 when he learned of the state court decision. He does not allege why he could not therefore bring a state court action challenging the NDOC's calculation of his parole eligibility date without having access to copies of particular statutes.

Most importantly, Plaintiff has not alleged having lost an underlying non-frivolous claim. Plaintiff has not even alleged what statutes he was convicted of violating and what his sentences were. In particular, he does not allege the specific conviction for which he was being imprisoned at the time he allegedly requested the statutes and was denied access to them. He therefore has not adequately alleged that the state court case even applies to him. He also has not alleged how

6

NDOC calculated his parole eligibility dates and how that calculation was inconsistent with the applicable law or affected the date of his parole hearing. Plaintiff also has not alleged which particular Defendants denied him access to the statutes after he discovered his claim concerning the miscalculations.

The Court therefore dismisses this portion of the access to the courts claim without prejudice, with leave to amend. If Plaintiff chooses to amend this portion of Count I, he must adequately allege facts showing what each Defendant did to violate his right to access to the courts, and these allegations must meet the requirements for stating a colorable access to the courts claim and cure the deficiencies noted above.

### 2. Count II

Generally, prisoners have a First Amendment right to receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). If a plaintiff states a colorable claim for interference with incoming mail, at summary judgment the court analyzes the prison regulations and practices concerning incoming mail under the factors outlined in *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Thornburgh v. Abbott*, 490 U.S. 401, 411–13 (1989).

Plaintiff alleges that on October 11, 2012 or thereafter, Defendant Rashonda Smith and/or Jane/John Doe I interfered with the delivery of Plaintiff's mail. But the only allegations here are conclusory. Plaintiff does not allege that Smith or any other Defendant intentionally destroyed or delayed any particular piece of mail. The allegations relating to any particular mail indicate that Plaintiff never received a motion or a related *Klingele* notice in Case No. 2:12-cv-129 ("the '129 Case"), causing the case to be dismissed, and that Smith has refused to provide him with copies of SDCC mail records. That claim fails, because the docket in that case clearly indicates that Plaintiff had notice of the motion at issue (and requested and received additional time to respond to it). Anyway, the motion was decided in July 2013, more than two years before this action was filed. It is clear for all of these reasons that that no First Amendment claim can lie based on the alleged delay of that notice. And, as noted, Plaintiff's allegations of Smith having tampered with his mail are speculative. He also alleges another Defendant (Burson) filed false

7

charges against him, resulting in his segregation, which has affected his mail service, but this is no allegation of improper mail tampering.

Plaintiff states no colorable First Amendment claim for interference with his mail. The Court dismisses this claim, with leave to amend.

### 3. Count III

Plaintiff alleges that on January 4, 2011 and thereafter, Defendants Cox, Greg Smith, and Wesley Mattice obstructed Plaintiff's prosecution of an excessive force claim in a case he filed in 2012. These Defendants withheld crucial information concerning whether or not video recordings existed that were pertinent to a January 4, 2011 excessive force incident that is the subject of the '129 Case. The relevant court denied Plaintiff's motion to compel. He alleges Defendants' conduct violated his First Amendment right of access to the courts.

Plaintiff fails to state a colorable access to the courts claim. Plaintiff's remedy for alleged discovery violations, spoliation of evidence, etc. must be directed to the court hearing the underlying claim. This Court cannot in effect sit as an appellate court over that court's action or inaction by entertaining a stand-alone claim based on the same acts that were the subject of failed discovery motions in that case. Anyway, the judgment on the verdicts in the '129 Case was entered more than two years before the present case was filed. Because amendment is futile, the Court dismisses this claim with prejudice.

### 4. Count IV

Plaintiff alleges Defendants withheld crucial information concerning whether or not video recordings existed with regard to an alleged July 28, 2011 excessive force incident that is the subject of the '129 Case. Defendants Greg Smith and Wesley Mattice responded to discovery requests by saying that they did not possess video recordings, but they did not explain in their discovery responses that the video cameras were incapable of recording. The disciplinary hearing officer, Lt. Keith Kennedy, alleged that he did not have access to the video recordings, but did not suggest that the video cameras were incapable of recording. Plaintiff was surprised at trial when Defendant Smith testified that the video cameras were not capable of

recording. Plaintiff argues the court in the '129 Case should not have allowed defense counsel to include this witness. The Court dismisses this claim with prejudice for the same reasons it dismisses Count IV.

    **5.    Count V**

Plaintiff alleges that on July 28, 2011 and thereafter, Defendants violated his right to access to the courts as to the '129 Case by withholding NDOC incident reports, which undermined Plaintiff's civil prosecution in that case of a claimed July 28, 2011 use of excessive force at Warm Springs Correctional Center. Incident reports from correctional officer Vidaurri, correctional officer Fancher, and CCS Chandra Thomas were withheld. These incident reports conflicted with each other and would have provided impeachment evidence necessary to alter the verdict for Plaintiff at his trial. Defendant also alleges that Defendant LaFleur is liable for delaying I-File review by Plaintiff and for redacting Plaintiff's I-file, including redacting the July 28, 2011 incident reports Plaintiff sought. Defendants McClellan, LeGrand, and Foster are liable because of their misconduct regarding a grievance concerning the I-File redaction. Full I-File access at the civil trial exposed that the intent of the deprivation was to gain an unfair advantage in that trial and Defendants would have known of that intent. The reports continued to be withheld until mere days before trial due to the collusion of the "Attorney General Agent" and the judge. This all undermined Plaintiff's pre-trial preparations and the validity of the verdict in the case. The Court dismisses this claim with prejudice for the same reasons it dismisses Count IV.

    **6.    Count VI**

Plaintiff alleges that on August 1, 2013 and thereafter, Defendants Pamela Feil and Megen McLellan violated Plaintiff's right to access the courts. During the pendency of the '129 Case, the defendants in that case cited Nevada Administrative Code ("NAC") section 284.718 as justification for refusing to answer Plaintiff's written discovery requests. On or about August 1, 2013, Plaintiff contacted Defendant Feil, who stated that the NAC was not required material and she refused to provide it to him even though she had the discretion to do so. On August 29,

2013, Plaintiff filled out forms requesting NAC Chapter 284 from the Nevada Supreme Court Library. On September 12, 2013, Defendant McLellan, who was filling in for Defendant Feil, accused Plaintiff of trying to subvert the request process by going around Feil. The NAC text arrived, but it was inadequate and Feil's stalling deprived Plaintiff of the opportunity to obtain citations and annotations before the December 26, 2013 discovery deadline. Without full and fair discovery, Plaintiff lost the case.

The Court finds that Plaintiff fails to state a colorable access to the courts claim. Plaintiff alleges that Defendants failed to assist him during the litigation of the case. As discussed above, prisoners are not entitled to assistance in litigating effectively once in court. The Court therefore dismisses this claim with prejudice, as amendment would be futile.

### 7. Count VII

Plaintiff alleges that from 2011 to 2014, Defendants violated his right to access the courts. Specifically, NDOC medical staff obstructed his access to his medical documents. Medical staff at SDCC and LCC ignored four properly submitted request forms seeking review of his medical records. Only after Plaintiff filed a grievance did LCC Medical conduct the September 26, 2013 review, which led Plaintiff to identify 13 desired documents. Weeks later, Plaintiff learned that there would be a charge of $7.80 for the medical documents, but Plaintiff was transferred to SDCC, delaying the transaction. Access to the medical documents became critical when the court directed Plaintiff to submit relevant documents to the magistrate judge for review prior to settlement negotiations. Documents were due on March 21, 2014. On March 14, 2014, Plaintiff appeared in person with the information required by governing regulations to obtain the medical documents. Defendants Carrillo and Ross refused to complete the transaction, claiming that they required a court order. They either misled or conspired with grievance responders to obtain denials. Defendants Gutierrez, Dressler, and Aranas denied relief under the grievance system. Accounting staff Defendant John Doe II misrepresented that Plaintiff did not have sufficient funds to complete the transaction and therefore further delayed the production of the documents even though NDOC account statements prove that funds were

available. Plaintiff's family paid the $7.80, but that amount also was deducted from Plaintiff's inmate account and he was not reimbursed for the extra amount. No settlement was reached in the case, partly due to Plaintiff's inability to submit medical documentation of injuries, and Plaintiff was prevented from prevailing at trial because he was overwhelmed and unprepared due to increases in cost and litigation burdens such as this.

The Court finds that Plaintiff fails to state a colorable access to the courts claim. Plaintiff has not adequately alleged the underlying claim and the relevant available remedies. Furthermore, Plaintiff has not adequately alleged how the delay in obtaining the medical documentation and his family's payment of an extra $7.80 caused Plaintiff to lose the case. Conclusory and vague allegations that increased costs and litigation burdens caused Plaintiff to lose his case are not sufficient. The Court therefore dismisses this claim without prejudice, with leave to amend. If Plaintiff chooses to amend claim, he must adequately allege facts showing what each Defendant did to violate his right to access the courts, and these allegations must meet the pleading requirements for stating a colorable access to the courts claim and cure the deficiencies noted above.

### 8. Count VIII

Plaintiff alleges that beginning in June 2008 and as recently as June 13, 2017, Defendants repeatedly confiscated Plaintiff's boxes of legal files for lengthy periods and destroyed the containers to ruin the organization of the files. The Court will not repeat the lengthy allegations here. In summary, Plaintiff alleges that various confiscations of his legal files totaled over 265 days and required Plaintiff to file numerous motions for extensions of time, motions for the return of files, changes of address, and other motions, resulting in a debt of over $3,000 making the outcomes of two of his cases unreliable. Plaintiff has not stated a colorable access to the courts claim. He has not alleged the nature of any non-frivolous claims he lost as a result of any of the alleged interferences with his legal files or how the interferences caused him to lose those cases. The Court therefore cannot assess the claims under *Lewis*. The Court dismisses this claim without prejudice, with leave to amend.

### 9. Count IX

Plaintiff alleges that during periods in which Plaintiff had pending litigation, the SDCC law library supervisor Defendant Rashonda Smith, Associate Warden of Operations Minor Adams, and Warden Brian Williams, Sr. are liable for violations of his right to access to the courts because they were involved in the library and facility operations. Plaintiff also alleges that SDCC was grossly understaffed, which obstructed direct access to the law library. He also alleges that Defendant Smith either inadvertently or intentionally failed to schedule appointments for library access. Unit officers often intentionally delayed release of prisoners to the library in order to harass inmates. Prison violence also was prevalent, triggering lock-downs that prevented library access. In addition, Defendant Smith does not schedule make-up sessions. Furthermore, Defendant Smith is unqualified for the position and her practices lead to long lines for assistance, sluggish inmate assistance, equipment breakdowns, and lengthy delays in repairs. The sluggishness interferes with compliance with court deadlines.

Defendant correctional officer Pascascio repeatedly obstructed Plaintiff's access to the library without legitimate cause by delaying Plaintiff's release to the library. SDCC does not provide legal textbooks, but instead provides access to research computers. However, there are not enough computers and the searching capabilities on the computers is inefficient. Furthermore, until 2015, prisoners were limited to taking out only five cases at a time and there were no trained legal assistants to guide selection. Defendant Smith was in charge of legal mail services, but the mail habitually was delivered late and sometimes not delivered at all.

In the '129 Case, Defendant Smith's failure to deliver a partial motion to dismiss nearly caused dismissal. The simultaneous failure to deliver the court's *Klingele* notice in that case directly caused the dismissal of valid claims. Plaintiff alleges that this conduct violated his First Amendment right to access to the courts.

With respect to the alleged inadequacy of the library and access to the library, Plaintiff fails to state a colorable claim. Plaintiff merely makes the conclusory and vague allegation that the alleged sluggishness interferes with court deadlines. Plaintiff has not alleged facts sufficient

to show that any of the alleged conduct prevented him from filing a non-frivolous claim. The Court therefore dismisses this portion of the claim without prejudice, with leave to amend. If Plaintiff chooses to amend this claim, he must allege facts sufficient to show that particular conduct by a particular Defendant injured him. Those allegations also must include allegations of the underlying legal claims he was prevented from filing and those allegations must comply with Rule 8(a). Plaintiff must also allege the lost remedy for any underlying claim and the available remedy for the access to the courts claim.

With respect to Defendant Smith's alleged failure to deliver mail, Plaintiff fails to state a colorable access to the courts claim. The allegations seem to indicate that the alleged failure to deliver a partial motion to dismiss did *not* result in dismissal and therefore did not injure Plaintiff. The complaint does include a conclusory allegation that Defendant Smith's failure to deliver a *Klingele* notice to Plaintiff resulted in the dismissal of valid claims, but the Court has noted, *supra*, how the docket disproves that allegation.

**10.    Count X**

Count X alleges the following: On January 6, 2015, Plaintiff returned to SDCC following a trial and filed a number of inmate grievances. On March 31, 2015, SDCC Warden Williams asked Plaintiff to kite him on all future grievances and said that he would personally attempt to rectify Plaintiff's issues. Plaintiff agreed and kited Williams twice on grievances. Williams was non-responsive, so Plaintiff filed three informal grievances on June 24, 2015. Williams retracted those grievances and demanded that Plaintiff give him more time to rectify the issues. Plaintiff again agreed and, during the next two months, Plaintiff submitted five more kites to Williams stating and restating issues. For the most part, Williams did not respond or cure the issues. From August 14, 2015 to October 9, 2015, Plaintiff filed at least seven new grievances.

On October 23, 2015, Williams chastised Plaintiff for breaking the agreement and against demanded that Plaintiff retract the grievances and give him to time to cure the errors. Plaintiff agreed, but stipulated that he would only retract grievances if he could refile them if Defendant

13

Ward was unable to cure the problem amicably. This agreement was put in writing. However, Plaintiff alleges that officials had no right to remove Plaintiff's grievances without consenting to the stipulation and that Defendant Williams improperly retracted grievances. On November 15, 2015, Plaintiff sent Williams a letter setting a 12/1/2015 deadline for relief or agreement nullification. On December 18, 2015, Plaintiff sent Williams a letter nullifying the agreement, and on December 19, 2015, Plaintiff being refiling some of the retracted grievances. Beginning on March 1, 2016, Plaintiff received Defendant F. Dreesen's rejections of his grievances, which stated that there was no provision in the regulations for refiling grievances. Defendant Dreesen similarly rejected subsequent refiled grievances. This prevented Plaintiff from obtaining review by others who might have effected relief.

Plaintiff alleges that this conduct violated his First Amendment right to access to the courts. Plaintiff fails to state a colorable access to the courts claim. Plaintiff has not alleged facts sufficient to show that any of Defendants' alleged conduct prevented Plaintiff from bringing a non-frivolous claim to court or interfered with his litigation of such a claim. He therefore has not alleged an injury, as is required for an access to the courts claim. Moreover, amendment is futile. As noted, there is no stand-alone right to file grievances or a right to any particular grievance procedure. The Court therefore dismisses this claim with prejudice, without leave to amend.

### C. Amendment

An amended complaint supersedes (replaces) the original Complaint, so an amended complaint must be complete in itself. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 907 n.1 (9th Cir. 2012); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989). Plaintiff must file the amended complaint on this Court's approved prisoner civil rights form, and it must be entitled "First Amended Complaint." Plaintiff must file the amended complaint within twenty-eight (28) days from the date of this Order, or the Court may dismiss with prejudice without further notice.

///

# CONCLUSION

IT IS HEREBY ORDERED that the Application to Proceed in Forma Pauperis (ECF No. 12) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall file the Complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that the substantive due process claims in Count I and Counts III through X are DISMISSED with prejudice.

IT IS FURTHER ORDERED that the portion of Count I alleging an access to the courts claim based on the alleged inability to discover a claim is DISMISSED with prejudice.

IT IS FURTHER ORDERED that the portion of Count I alleging an access to the courts claim based on the alleged rejection of Plaintiff's request for certain statutes is DISMISSED with leave to amend.

IT IS FURTHER ORDERED that Count II, alleging a First Amendment claim for interference with incoming mail is DISMISSED with leave to amend.

IT IS FURTHER ORDERED that Counts III–VI and X are DISMISSED with prejudice.

IT IS FURTHER ORDERED that Counts VII, VIII, and IX are DISMISSED without prejudice.

IT IS FURTHER ORDERED that the Clerk shall mail Plaintiff the approved form for filing a § 1983 complaint, instructions, and a copy of the Complaint (ECF No. 1-1). Plaintiff must use the approved form and write the words "First Amended" above the words "Civil Rights Complaint" in the caption. The Court will screen the amended complaint in a separate screening order, which may take several months. If Plaintiff does not file an amended complaint within twenty-eight (28) days of the date of this Order, the Court may dismiss with prejudice without further notice.

IT IS SO ORDERED.

Dated this 28th day of August, 2018.

_____
ROBERT C. JONES
United States District Judge

15